**SO ORDERED.**

**SIGNED this 29 day of April, 2009.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| KVS FOODSYSTEMS, LLC, | 08-07905-8-RDD |
| DEBTOR | |

### ORDER DENYING APPLICABILITY OF AUTOMATIC STAY UNDER 11 U.S.C. § 362 AND DENYING EXTENSION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 105

Pending before the Court is the Debtor's Motion to Determine Extent and Applicability of the Automatic Stay Under 11 U.S.C. § 362 or, in the Alternative, to Extend the Automatic Stay under 11 U.S.C. § 105 (the "Motion") filed by KVS Foodsystems, LLC (the "Debtor" or "KVS") on December 17, 2008 and Subway Real Estate Corp.'s Response in Opposition to Debtor's Motion to Determine Extent and Applicability of the Automatic Stay under 11 U.S.C. § 362 or, in the Alternative, to Extend the Automatic Stay under 11 U.S.C. § 105 (the "Response") filed by Subway Real Estate Corp. ("Subway") on January 13, 2009. After several continuances at the request of both parties, the Court conducted a hearing on the Motion and Response on February 26, 2009.

## BACKGROUND

1. On November 7, 2008, KVS filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Since the petition date, the debtor has continued to operate as a debtor-in-possession.

3. Vitus B. Bradshaw, Jr. ("Bradshaw") entered into a franchise relationship with Subway in his individual capacity. Subsequently, Mr. Bradshaw formed the Debtor to operate his Subway stores and served as the Debtor's managing member.

4. Pursuant to the franchise relationship, Subway enters into master lease agreements with the respective landlords once it has approved a store location and the proposed lease terms. Subway then subleases the premises to the franchisee, in this case Bradshaw, to operate each store. Subway requires a franchisee to make the rent payments directly to the landlord listed on each master lease.

5. In accordance with the franchise arrangement, Subway entered into two master lease agreements for commercial space located in Jordan Shopping Center and Shamrock Plaza. Thereafter, Subway entered into sublease agreements with Bradshaw for these locations.

6. Although the Debtor does not hold a leasehold interest in the premises, the Debtor operated two Subway restaurant locations.[1] Subway Store No. 5219 is located in Jordan Shopping Center in Clinton, North Carolina and Subway Store No. 22288 is located in Shamrock Plaza, also in Clinton, North Carolina.

---

[1] Bradshaw permitted the Debtor to operate the Subway stores in the leased premises but the record does not reflect that either of the subleases were assigned to Debtor.

7. Subway asserts that Bradshaw breached his sublease with respect to Store No. 5219 based on his failure to pay rent for the months of September, October, November, and December 2008 and January 2009. Subway mailed Bradshaw several notices of default and, after Bradshaw's failure to cure the default, Subway informed Bradshaw that the sublease terminated on October 21, 2008. Subway also demanded possession of the leased premises and the past due rent.

8. In addition, Subway asserts that Bradshaw also breached the sublease in connection with Store No. 22288 based on his failure to pay rent for those same months. Subway mailed Bradshaw several notices of default and, after Bradshaw's failure to cure the default, Subway informed Bradshaw that this sublease terminated on October 21, 2008. Subway demanded possession of the leased premises and the past due rent.

9. Subsequently, on December 8, 2008, Subway filed two Complaints for Summary Ejectment in the General Court of Justice, District Court Small Claims Division, Wilson County, North Carolina against Bradshaw seeking to terminate Bradshaw's right to possess the leased premises and to allow Subway to re-enter the property.

10. On December 10, 2008, Subway served a copy of the summons from each case on Bradshaw, in his individual capacity, seeking to eject Bradshaw from both Subway locations.

11. Subsequently, the Debtor filed this Motion seeking (1) a determination by this Court that, in fact, the Debtor holds an equitable leasehold interest in the commercial locations and, as a result, the automatic stay provision of the Bankruptcy Code protects the Debtor, or, in the alternative, (2) to extend the automatic stay to stay any proceedings or actions against

Bradshaw, individually, with respect to Subway's attempt to eject Bradshaw from the leased premises.

### DISCUSSION

The Debtor asserts that it holds an equitable interest in subleases and that the equitable interest is property of the estate under 11 U.S.C. § 541.[2] Because the equitable interest is part of the estate, the Debtor asserts that it is entitled to the automatic stay protections set forth in 11 U.S.C. § 541.

By its own admission, the Debtor failed to make rent payments in connection with the subleases for October and November 2008. However, the Debtor argues that since the due dates were prior to the petition date, it cannot make payments on its prepetition rent.

Mr. Bradshaw testified at the hearing that he has operated the Subway locations as if the Debtor was the owner of such stores. He stated that the monthly rental payments, the royalty payments to Subway, and all other transactions related to the Subway stores were paid through the Debtor's accounts and not through his personal accounts. Furthermore, he contends that the personal property taxes and all of the required insurance listed the Debtor as the entity responsible for the Subway locations.

Subway did not present any evidence disputing the fact it or the respective landlords may have received payments from accounts held by the Debtor or that the Debtor may have been making payments on behalf of Bradshaw.

---

[2]The Debtor failed to list any subleases of the premises of the two stores in Schedule G and, on Schedule F, the Debtor lists Shamrock Plaza and Jordan Plaza as unsecured creditors based on its nonpayment of rent for October and November 2008. The Debtor states "sub-lease in the name of: Vitus B. Bradshaw, Jr." with respect to the Shamrock Plaza debt and "sub-lease in the name of: Vitus Bradshaw, Jr" in connection with Jordan Plaza.

Regardless of who made the payments on behalf of the Debtor, Subway contends the Debtor is not entitled to the protections set forth in 11 U.S.C. § 362(a). It argues that even though the Debtor may have made the sublease payments for Bradshaw, that in and of itself neither makes the Debtor a party to the subleases, nor does it suffice to give the Debtor an interest in the leased premises. Subway contends that since the Debtor is not a party to the subleases and does not hold any interest in them, the subleases have been terminated pursuant to its correspondence to Bradshaw and his failure to cure the arrearage.

Section 362(a) of the Bankruptcy Code operates as a stay of:

> (1) ...the commencement or continuation...of a judicial, administrative, or other action or proceeding against the *debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (3) ...any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

(emphasis added).

The Fourth Circuit has found that the automatic stay only protects "the debtor, not third party defendants or co-defendants." *Kresler v. Goldberg,* 478 F.3d 209, 213 (4th Cir. 2007); *A.H. Robins Co. v. Paccinin,* 788 F.2d 994, 999 (4th Cir. 1986). Courts have extended the automatic stay to certain non-debtor third parties in "unusual circumstances." *Kresler,* 478 F.3d at 213; *Robins,* 788 F.2d at 999. An "unusual circumstance arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Robins,* 788 F.2d at 799, *see also Kresler*, 478 F.3d at 213. The *Robins* Court went on to say that "[a]n illustration of such a situation would be a suit against a third-

party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Robins,* 788 F.2d at 799.

In *Kresler*, the debtors asserted that creditors of a wholly owned subsidiary violated the automatic stay provisions of Section 362(a) in pursuing a summary ejectment action against the wholly owned nonbankrupt subsidiary of the debtor. *Kresler,* 479 F.3d 209. In relying on *Robins*, the *Kresler* court went on to find that based upon the facts presented to it, there was no basis to conclude the blanket identity of an individual debtor, his LLC holding company, and a wholly owned subsidiary was the same. A judgment against the individual and his holding company would bind it and not the wholly owned subsidiary. The Court went on to say that "[i]t is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity." *Kresler*, 478 F.3d at 213 (citations omitted).

Bradshaw is neither the Debtor, a third party defendant, nor a co-defendant in this case.[3] Bradshaw has a contractual relationship with Subway. He is the franchisee and the sublessee, not the Debtor. Furthermore, there are no unusual circumstances in this case. The subleases are between Subway and Bradshaw. The Debtor failed to present the Court with any written

---

[3] The complaints filed for summary ejectment by Subway, captioned as Case No. 08-CVM-4865 and 08-CVM-4866 in the General Court of Justice, District Court, Small Claims Division, were filed against Bradshaw, individually. KVS was not a co-defendant in either action.

documentation that Bradshaw properly assigned the subleases to the Debtor.[4]  The fact that the payments to Subway were drawn upon an account of the Debtor did not limit Subway's rights and remedies under its franchise agreement with Bradshaw.  Bradshaw chose the manner and method of payment, not Subway.  Clearly Bradshaw, as an individual, and the Debtor, as an LLC,  are separate and distinct entities.

The Debtor is not the sublessee under the leases with Subway.  KVS Foodsystems, LLC is only the operating entity for the Subway locations.  Vitus Bradshaw is the sublessee under the sublease agreements with Subway.  Although the Debtor may be in possession of the premises, it is without the expressed consent or permission of Subway.  In this circumstance, possession of the leased premises alone does not warrant the Court extending the automatic stay under Section 105 of the Bankruptcy Code to non-estate property.  As such, the Court finds that the subleased premises are not equitable interests which are property of the estate of KVS Foodsystems, LLC and the protection of 11 U.S.C. § 362 does not extend to Vitus Bradshaw.  The fact that Bradshaw directed the Debtor to make payments to Subway on behalf of his individual sublessee

---

[4] Any attempt by Bradshaw to assign the subleases would have been limited to the terms set forth in the original sublease.  More specifically, paragraph 7 of the Sublease dated March 17, 1989 between Subway Restaurants, Inc. and Vitus B. Bradshaw, Jr. provides "[t]he Sublessee may assign or sublease the premises only to a Franchisee of Doctor's Associates, Inc. for use as a sandwich shop, provided that the prior written consent to the assignment or sublease is obtained from the Sublessor, which consent shall not be unreasonably withheld."  Doctor's Associates, Inc. is the Subway entity that approves and enters into franchise agreements for the North Carolina locations. Subway contends that it has a strict policy of only entering into franchise agreements and subleases with individuals, not entities, but recognizes that many of its individual franchisees form a limited liability company to operate the store.  However, Subway asserts that these operating entities do not impact the relationship between the  individual franchisee and Subway.

obligations does not give rise to the level of unusual circumstance required to extend the automatic stay to a non-debtor entity.

Furthermore, the Court finds that 11 U.S.C. § 105 should not be employed by the Court when another remedy is available under the Bankruptcy Code.  In this situation, Bradshaw is not without a remedy. He retains the ability to file an individual bankruptcy petition under the appropriate chapter should he determine that it is in his interest to do so to gain the benefit of the automatic stay.

Based upon this Court's finding that the automatic stay in the Debtor's case does not apply to Vitus Bradshaw, it is not necessary for the Court to reach a determination as to whether or not the subleases were, in fact, terminated by Subway.

Therefore, the Court hereby **DENIES** the Debtor's Motion to Determine Extent and Applicability of Automatic Stay Under 11 U.S.C. § 362 or,  in the Alternative, to Extend the Automatic Stay under 11 U.S.C. § 105.

**SO ORDERED**.

**END OF DOCUMENT**